Morning, Your Honors. Good morning. Andrew Kennedy on behalf of Mr. Alexander and with me is Co-Counsel Mike Filippovich. May it please the Court that I would like to reserve two minutes for rebuttal. This case is about the fact that in 2005, based on the same facts as James Alexander was convicted in 1991, he was charged with a more serious offense. The State argued aggravating circumstances and sought a grossly superior sentence than it sought in 1991. And the fact is that that raises the presumption of vindictiveness and that presumption was never overcome and never recognized by the State of Washington. So your whole claim, you don't pretend that there was actual vindictiveness here. No, there was actual vindictiveness, yes. But my point is – Well, you don't really have much of a case if it's actual vindictiveness. Well, my point is – Your point is that the decision of the Washington Supreme Court on its determination that the presumption did not arise on these circumstances was an unreasonable application of the United States Supreme Court law. Yes. Pierce and what's the other one, Black and Ridge or – Yes, Blackridge. Blackridge. Yes. And I'm saying at the root I believe there was actual vindictiveness, but I do feel that the error – What's your proof for – I mean, if you want to go down that road, what's the proof for actual vindictiveness? Well, the fact that in 1991 the facts were identical and the State asked – That's all circumstantial. That's not proof of actual vindictiveness. What proof do you have of – was it a different prosecutor? It was a different prosecutor. Was it a different judge? It was a different judge. Okay, so where's the proof of actual vindictiveness? Well, the Supreme Court has said that it's about the institutions. It's not about the actual individual. Okay, well, where's the proof? Actual vindictiveness suggests that somebody had it in their mind that we're going to go and get this guy and that you've got proof that they said to themselves institutionally or otherwise we're going to go and get this guy. Do you have any proof of that whatsoever? There's no direct proof, no. Okay, then you don't have an actual vindictiveness case. You may as well move on to the presumption of vindictiveness. I just want to make clear. Your case really turns on whether or not the Washington Supreme Court's decision was an unreasonable application regarding its failure to recognize a presumption. Yes, yes, and I believe it was. Why? Because he was charged not only with a more serious offense, but also they alleged aggravating circumstances and sought a much more severe punishment than they sought the first time around. Let's go through each one of those for just one second. Okay. So the first determination to charge murder by abuse, right, they had to start over, correct? Yes, they did. After the first conviction was reversed. Yes, they did. Set aside. So they had their choice basically between some sort of murder charge and manslaughter. Yes. In their realistic determination, the case was more serious than manslaughter, so they determined that the most analogous charge was, given the circumstances, was the abuse, murder by abuse, right? Well, I would say, I mean, what, that seems to be neutral. That is their assessment of it, and I think that may have been their thought process, but I think there are two things to point out with regard to that. One is that in 1991, they had the same option. They could have charged homicide by abuse at that time, too, and they chose not to. And the other is the fact that it's not. Well, they were concerned about intent at the time. Yes, but the facts were no different. Well, there does seem to be, I don't think we can rely on this, but there does seem to be something in the record. I think that the, it's not the last opinion, but that the mother of the children now spoke English better and had related more instances of abuse that had gone on here. But it, you know, obviously, it, you can argue until the cows come home that this is not a serious offense. But having seen a number of these type of offenses, what we're talking about, a 20-month-old child that was killed, and that's a tough jury case to try. I mean, anyone that's tried those type of cases. And then the other child was abused as well. And so what prosecutor worth their salt would charge a manslaughter on a case like that? Well. I mean, I understand why you would want that, but it just isn't, it's a pretty aggravated situation. It isn't. The facts are startling. But the facts were just as startling in 1991, and they did not charge homicide by abuse then. Doesn't the homicide by abuse have a higher standard of proof than what they charged? There are additional elements to it, yes. So the state would have assumed an additional burden in 1991 if they had done that. They might not have been willing to do that, especially when they looked like they had a pretty cheap way of getting there under their felony murder theory. Well, they also had the option to charge in the alternative. But the point is, it doesn't even matter. None of that, but all those things that we're talking about don't sound like vindictiveness. They sound like assessing the evidence and deciding strategically, and then when he gets it set aside, they're not willing to charge him with a crime that has a top exposure of 10 years, which, what, 10 years is, what, 120 months or something like that. And so how can that be vindictive? But the point is, that's a response to the presumption of vindictiveness. The fact is that the bare facts that the Court was presented with should have raised that presumption because they created the circumstances that create the appearance of vindictiveness. So the first, your first circumstance was the new charge. The new charge, yes. A more serious charge. Yes. Okay. The second one was? The second one was that they continued to allege the aggravating circumstances. Okay. But that's not a change. They did that before. No, but it is. Now the jury found them. So when he goes and gets back and sentenced, the previous time they didn't have to prove him before a jury, right? Yes. So if a court were sentencing, they would go through a different procedure about those regarding findings, as opposed to when they're submitted to a jury and a jury has found them to be true. The court can skip a bunch of things in terms of sentencing at that point, right? Yes. But it is a change in the sense that it carried a greater sentence, and that dovetails with the third way in which it was different, is that the first time the State asked for 360 months. The second time they asked for 640 months. And the facts were identical. There's no reason. Except now he's been convicted of the crime that strategically maybe you chose not to prosecute because you had some concerns whether you'd be able to prove that. And he's also, the findings have been found true, as opposed to the district court having to assess whether they were there. So the district court was sentencing on a different case. I don't believe it was, Your Honor, because the facts were always the same. They always alleged the same aggravators. But the thing is, after they've been found true by the jury, you can't say, well, those aren't really true and litigate it all over again. You only can attack them as they were found by the jury. You're in a different position at sentencing, and the prosecutor is in a different position in arguing those factors when they've been found true by a jury, right? I don't believe it is different, Your Honor, because either way the facts were established and the court found them. The Supreme Court judge the first time around found the same facts. Is that correct? He actually found one additional fact. Yes, the Supreme Court said lack of remorse. Yes. Right? Yeah, he found all those factors the first time around. There was no difference. He had to find those factors in order to impose aggravate or whatever they called it. In order to impose the first sentence, the 300 months, the second time around those factors didn't need to be proven. Does the – is the important fact here on the greater sentence the fact that the State, that the prosecutor asked for additional time, or that the judge actually sentenced him to additional time? Well, I think both are important, but the key thing is that the State asked for additional time, substantially more than they asked for the first time under the exact same circumstances. Because you have a different judge here who's seen a different set of witnesses or at least witnesses testifying in perhaps a different way than they testified the first time. You have a more serious charge. So it's hard to find a vindictiveness in what the judge did. And if it's just the State asking for additional time, the State has a more serious charge this time. But the facts were always identical. And the fact is that the more serious charge is what raises the presumption of vindictiveness. So let me just ask you this. To go along with your position or to adopt your position, we would have to say that the Washington Supreme Court was unreasonable in the way it applied these cases, these two Supreme Court cases. Yes. All right? So tell me again why it's unreasonable. Because they did not look at the presumption of unreasonableness. They started the case from the – Of vindictiveness. I apologize. Vindictiveness. They started the case from the position that it was Mr. Alexander's burden to establish that there was vindictiveness. Their opinion said he has – vindictiveness has not been established. That's not his job. His job was to show that there's a realistic likelihood of vindictiveness, and then it's the State's job to rebut that presumption. Okay. But under – okay. So but if we're under AEDPA, which we are, and I just – I'm looking here on October 6th, the Supreme Court just, again, reversed the Ninth Circuit per curiam in an AEDPA case, 9-zip, Lopez v. Martin, Verness, Smith, and criticized the Ninth Circuit for engaging in not applying AEDPA appropriately and interpreting Supreme Court precedent in a very general way and trying to make it apply when – I mean, some of the language, and it was both the determination of the facts and the law, but the Circuit precedent cannot refine and sharpen a general principle of the Supreme Court jurisprudence into a specific legal rule that the Court has not announced. So you're asking us to engage and review to get around those double-deference standards, and tell me how we can do that. I see that my time is up. Go ahead. Answer the question. Okay. Thank you. I don't believe that we're asking the Court to go around what the Supreme Court has said. The Supreme Court has said there ought to be a presumption of vindictiveness when there's a realistic likelihood that vindictiveness has arisen. And the fact is that the charging decision and the sentence sought by the State created that presumption, and the State never rebutted it, and the State court judge never addressed it. Okay. Thank you. Thank you, counsel. Good morning, and may it please the Court. I'm Paul Weiser, Assistant Attorney General, appearing on behalf of Appellee Miller Stout. James Alexander kicked and beat his son to death. The prosecutor had to make a charging decision, and under Andress, felony second-degree murder was no longer available. Under the facts of Alexander's case, the Washington Supreme Court's rejection of Alexander's vindictive prosecution claim may have been debatable, but it was not unreasonable, and we'd ask that the Court affirm the decision. Doesn't the presumption of vindictiveness kick in? Didn't the Washington Supreme Court have to start from the position that vindictiveness had been shown by the circumstances, that is, that he had prosecuted his appeal, that he had been successful, and that he was charged with a more serious crime and sought a more serious sentence? Doesn't that then invoke the presumption of vindictiveness, which the State has the opportunity to rebut? I would agree, Your Honor. Ordinarily, it would. I don't believe under the circumstances of Mr. Alexander's case that it – that the presumption arises. Well, why not? And what changed? The Washington Supreme Court's decision in Andress removing felony second-degree murder from the table. The prosecutor – that was not an option for the prosecutor to choose. The prosecutor had to choose some offense that he could charge. He couldn't choose manslaughter. He could have chosen manslaughter. The State had concerns about intent the first time around. We don't know that that was it. I think that it was more likely that the easier of the charges to prove was felony second-degree murder. As the Court indicated earlier, there are additional elements, in fact, different elements for the crime of homicide by abuse. Well, okay. So let me – so your argument why the presumption doesn't – if – let's say they had just reversed the second degree or, I guess, or the felony murder based on some other ground, you know, maybe instructional error. Let's say there was instructional error. Then if they had come back and the felony murder were still available and they charged child murder by abuse, which is – it does – it is higher than that, correct? Oh, it has different elements. I think the prosecutor – I think the prosecutor said something that it wasn't higher. But if they at that point had decided to do that instead of just recharge the felony murder, would the presumption attach there? I believe so under the court scenario that the presumption would attach to that. All right. But the fact that they were then placed in a situation where they either had to charge something that had a top of 10 years or something that had a significantly greater ceiling – they really only had those two to choose from. So you're saying because they didn't – they couldn't try him for the same offense, he doesn't get the presumption? That's correct, Your Honor. All right. And under the circumstances of the case, that may – They could have charged him for – with abuse – murder by abuse the first time around, correct?  That option – that charge was on the table. That charge was available, legally available. It was on the table. They had a murder by – they could have charged intentionally, just flat outright intentional murder, I guess, if they wanted to. Yes, they could have, Your Honor. Those charges were available. They looked at everything and they determined that they should charge him with felony assault – felony murder based on assault. That's correct. And that was based upon the evidence that was available to the prosecutor in 1991, a different prosecutor, I might add, and he decided that that was the – So what evidence changed after the conviction was vacated? What did the new prosecutor look at that was different or in addition to the – that they didn't have the first time around? Your Honor, I don't think there was necessarily a change in the evidence. I think the prosecutor dug a little deeper and found the evidence of a pattern of abuse or torture against Brian, and that was something that was not an element of felony second-degree murder, but it was an element of homicide by abuse. Is that – that statement you just made, that the prosecutor dug deeper and found a pattern or torture in the past, is that documented in the record? Aside from the fact that the prosecutor alleged and probable cause was found for that offense, I don't know that there's necessarily anything describing that. The grand jury – in the second time around, was it a grand jury filing or was it a prosecutor? It was an information. An information? Yes. Well, let me ask you this, and I don't think this probably matters, but I'm just – I'm just curious. Did – in the second trial, were there lesser included offenses given to the jury, either that were required or – what was the theory of defense that – what did they argue? Because it seems to be – I didn't see that there was a dispute  That's correct. Did he blame it on someone – did he blame it on the mom, or did he – what was his defense, and did the jury have a choice of, say, manslaughter, and they rejected it? Yes, Your Honor. Mr. Alexander did testify the defense was not that someone else did it. He acknowledged that he, in fact, had inflicted this beating, but I think the defense argument was that this was just a horrible result of reckless conduct on Mr. Alexander's part, that he just got carried away in his disciplining of his son. And the jury was instructed on the offense of first-degree manslaughter. Although there was some question at the time of trial whether that was necessarily a lesser included offense, the judge nevertheless gave that instruction, and as we know, the jury rejected that possibility as a – What changed – so the first time around, the prosecutor, and I guess the Department of Corrections recommended a sentence of – was it 360 months? I believe the recommendation the first time around was 360, yes. Right. So the second time around, it goes up to 660 months? Is that what it was? It was – I believe the prosecutor was 640, and the Department of Corrections recommended something in excess of that. It may have been 660 months. Yes, I thought – so what changed there? I think, Your Honor, it was basically – That's a really – that's not a small increase. That's correct. That's a significant increase. And as we know, prosecutors generally will ask for a sentence knowing that the court is not going to impose nearly the amount that they ask for. But Mr. Alexander had noticed from day one in this case back in 1991 that this was an aggravated case, whether it was a felony murder, whether it was a homicide by abuse, that this was an aggravated case. And that's why the prosecutor – So what I'm trying to figure out, what was it that – you know, the first time around, the Department of Corrections and the prosecutor said, you know, this is a horrible case. I mean, it's a terrible case. You know, you just can't imagine a case like this. It's awful. But they stood up there and they said 360 months. Yes, Your Honor. I think that that – So what changed to merit a recommendation of 660 months? Isn't there something in the record about what people were getting on that child abuse by – weren't there a couple of other cases that were referenced in terms of what the general sentences had been? I think there may have been, but there weren't that many prosecutions, Your Honor, under the homicide by abuse. Fortunately, there aren't that many children that get murdered. But that's – Correct. But I thought that there were – but I thought that there was some discussion somewhere about other cases on that that that was a fairly consistent type of sentence that was received on this – that particular – when you're convicted of that particular offense. Yes, Your Honor. That it was out – it was not out of sync of what people convicted of that offense. Wasn't that in connection with the first sentence when the prosecutor recommended 360 months? There was a comparison. He went through the existing case law and pointed to cases where the sentence was 470 months, 400 and some odd months. And here they were recommending 360. So they wanted to show that the recommendation was within the range. That's correct. That was the first time. But you still haven't answered my question. What changed that merited the 660 other than we can now look at this again and we can just – what they did the first time was just not enough. Your Honor, it was just – Just not enough for this terrible crime. It was based on evidence that was not heard or considered at the first trial. And that would be the evidence of the pattern of abuse and torture that he had inflicted on Brian over the months leading up to the fatal episode in 1991. The reason a presumption does not arise in this case is because Alexander's case wasn't even the marquee case for the Andress issue, and there wasn't really much of a fight involved with that. He filed his personal restraint petition. Prosecutor acknowledged, as he had to, that Mr. Alexander's conviction had to be set aside. So at that point he was returned to square one. And as the court has pointed out, he had a choice between manslaughter in the first degree or homicide by abuse and the maximum punishments that those two offenses covered. I have one last question for you. Assuming that the presumption arises, is it rebutted on this record? I believe so, Your Honor. If there's ever an example of a record rebutting the presumption just from the face of it. Alexander was not alone in having his conviction set aside. I don't believe the record reflects exactly how many people were in the same situation as he was, had their second-degree murder, felony murder conviction set aside, but it may have been a couple of hundred. All of the defendants who were convicted of that crime between 1976 and the year that In re Andres was decided. So he was not unique. He was not the only person to have been in this situation. There were a number of others who were presented with similar facts, and prosecutors had to make similar difficult choices. Sometimes they chose first-degree manslaughter. Others decided to charge a greater offense when the case was returned. Anything else suggest that it's rebutted, other than that he was part of this sort of set of circumstances more broadly? I think, Your Honor, the fact that the prosecutor agreed and that this was not something where it was thrust upon the prosecutor unwillingly. The prosecutor acknowledged that the conviction had to be set aside as a matter of law, so it wasn't as if he was involved in some kind of legal. Well, and if it's a different prosecutor charging and it's a different judge hearing the case, is that evidence of the presumption being rebutted? I believe it does, Your Honor. It makes it maybe less of a personalized matter. I don't know that that makes all the difference in the world, but I think that that is something that has to be considered when we're deciding whether a presumption arises. Or rebutted. I'm sorry? Or rebutted. Or rebutted. There are no further questions. We'd ask that the Court affirm the district court's decision. Thank you. I believe you have a minute for rebuttal. Your Honors, I'd like to address the one key question that you asked the State, which is what was different. And the answer is that nothing was different. And the State conceded that fact before the State Supreme Court, saying it was, quote, unquote, a verity on review that the evidence of abuse available to the State did not improve significantly from 1991 to 2005. The fact is that nothing was different. And the fact is that all along. The fact that it's a different prosecutor and prosecutors try cases differently. Prosecutors have different capabilities. And, I mean, any defense attorney worth his salt knows that sometimes you'd rather go to one prosecutor than another just in terms of how they evaluate things. What does a prosecutor have to say exactly? Does a second prosecutor have to see something in the exact same way as a first prosecutor to give rise to the presumption or for it not to be a presumption? Does he have to argue? Well, I mean, what you're saying is that if someone sees the case a little bit differently, that right there gives rise to the presumption. Well, it's not a little bit differently. Well, no, but people do. But they do. I mean, they do see things differently. Someone might give you an offer of second degree, and another prosecutor might stick to, you know, first degree with special circumstances. And it's what they can prove. The fact is if, as in this case, the State charges something that's substantially more severe than they did the first time around, that does give rise to the presumption. It's not a little bit different. They asked for 640 months as opposed to 360 months. That's nearly twice as long. And the fact is that the State initially tried to tell the State court that they could not argue vigorously enough that it was not a greater offense in order to avoid mandatory joinder. And then when it came time for sentencing, they tried to allege that it was a much more serious offense. And that is vindictive prosecution. That gives rise to the presumption. What's the relief you're actually seeking here? Are you seeking a reduction in the sentence from, what is it, 400 months to 300 months? Well, I believe that Mr. Alexander's ---- The whole new trial. I believe that Mr. Alexander's already served over 300 months, so I don't think that it would really be ---- it would really matter one way or the other whether it was brought back to the State to the position where it was when they decided to charge him or if he were to have his sentence adjusted to 300 months. All right. Well, thank you. Thank you. Thank you. Thank you. Very well-argued case. Thank you very much. Matter submitted.
judges: Paez, Bybee, Callahan